UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 98-40126 |
| Plaintiff, | * | MEMORANDUM OPINION AND ORDER REGARDING |
| -vs- | * | FINES, FEES AND RESTITUTION IN VACATED CONVICTION |
| JERRY MEDICINE HORN, | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending before the Court is Jerry Medicine Horn's motion for return of the fine, fees and restitution he paid in this case. (Doc. 76). The United States has moved to credit the amount Medicine Horn paid for the fine and special assessment toward the attorney fees incurred when representation was provided for Medicine Horn under the Criminal Justice Act. (Doc. 80).

## BACKGROUND

On September 22, 1998, Medicine Horn pled guilty to Count 1 of the Superseding Information charging him with burglary in violation of 18 U.S.C. § 1153 and SDCL § 22-32-8. The burglary occurred at the Lake Andes City Liquor Store, which is located on former allotted land on the Yankton Sioux Reservation. (Doc. 39.) Medicine Horn was sentenced to 12 months and 1 day imprisonment, $861.58 in restitution to the victims, a $500 fine, and a $100 special assessment. (Doc. 54.)

On July 9, 2008, Medicine Horn's burglary conviction was vacated because it occurred on former allotted land which had passed out of Indian hands and, under the holding in *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010 (8th Cir. 1999), this Court lacked jurisdiction when the Judgment was entered. (Doc. 74.)

Medicine Horn seeks return of the restitution, fine and special assessment paid in relation to the 1998 conviction. The Declaration of Stephanie Bengford shows Medicine Horn paid the $100 assessment and $10.65 towards his fine. (Doc. 81.) Restitution in the amount of $861.58 was paid to the Clerk of Court and then disbursed to the victims (Doc. 81.)

**<u>Fine and Special Assessment</u>**

The United States acknowledges that normally the money paid towards the fine and assessment would be returned to the defendant when a conviction is vacated. *See United States v. Hayes*, 385 F.3d 1226, 1229–30 (9th Cir. 2004) (holding that, where the defendant's conviction was reversed on collateral review, the government must return amounts paid as special assessment and costs, though it need not reimburse for restitution disbursed after the conviction became final). The United States argues that in this case, however, the money should instead remain with the Clerk of Court to be credited towards the attorney fees incurred in defending Medicine Horn under the Criminal Justice Act.[1] The United States cites 18 U.S.C. § 3006A(f) which provides, in part:

> Whenever the . . . court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to . . . the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

18 U.S.C. § 3006A(f). In support of its argument that the fine and special assessment should not be repaid to Medicine Horn, the United States relies on *Museitef v. United States*, 131 F.3d 714 (8th Cir. 1997). There, a CJA lawyer was appointed to represent the defendant due to his inability to afford a lawyer. Evidence was presented during trial that the defendant owned businesses and a liquor license and he may have been able to afford his lawyer. The issue before the district court in *Museitef*

---

[1] The Criminal Justice Act ("CJA") was passed by Congress in 1964 "to insure that defendants who are financially unable to afford trial services necessary to an adequate defense are provided them in accordance with the Sixth Amendment to the United States Constitution." *United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987). Counsel must be appointed under the CJA if the court is satisfied after "appropriate inquiry" that the defendant is "financially unable to obtain counsel." 18 U.S.C. § 3006A(b); *see Barcelon*, 833 F.2d at 897.

was whether the defendant needed to repay some of the CJA attorney fees because he misrepresented his finances. *Museitef* is inapplicable here. Medicine Horn showed that he was financially unable to afford a lawyer and one was appointed for him. (Docs. 6, 7.) There is no evidence that he misrepresented his financial status. His recovery of $110.65 for the special assessment and partial fine he paid is not the type of proof that would cause the Court to order repayment of attorney fees under 18 U.S.C.A. § 3006A(f). *See Museitef*, 131 F.3d at 716 ("repayment should be ordered under § 3006A(f) only after a full inquiry into his actual ability to bear those costs"). Accordingly, the United States' motion to apply available funds to attorney fees will be denied.

The United States' brief states that "[m]andatory special assessments per 18 U.S.C. § 3013 and fines per 18 U.S.C. § 3572 are paid into the Crime Victims' Fund to support programs for victims, and the Clerk of Court can pull that money back if so ordered." (Doc. 80 at 4.) The Court will direct the Clerk of Court to retrieve the amount Medicine Horn paid for the special assessment and fine in this case.

**Restitution**

Medicine Horn's entitlement to a refund of the restitution he paid is a more difficult issue. The money was disbursed to the victims so it is no longer in the Court's possession or control.[2] In *Hayes*, the Ninth Circuit declined to require the government to reimburse the defendant for restitution after his conviction was vacated, reasoning that the government was a mere "escrow agent" executing a then-valid final judgment in favor of a third party. *See Hayes*, 385 F.3d at 1230. In this case, the United States argues that sovereign immunity bars a claim against it for the amount of money Medicine Horn paid in restitution.

In *Nelson v. Colorado*, — U.S.—, 137 S.Ct. 1249 (2017), the Supreme Court considered whether the Colorado Exoneration Act violated due process by requiring defendants, whose convictions had been reversed or vacated, to prove their innocence by clear and convincing evidence

---

[2] The victims, the City of Lake Andes and Northwestern National, received Medicine Horn's restitution payments via the Clerk of Court. (Doc. 81.)

3

in order to obtain a refund of costs, fees, and restitution paid. There, two defendants' convictions were vacated, but the State of Colorado withheld the money it had obtained from the defendants as a result of the now-vacated convictions. *Nelson*, 137 S.Ct. at 1253. Colorado would return the money only if the defendants proved by clear and convincing evidence that they were innocent of the offense. *See id.* at 1254. Colorado had not proven anything about the defendants' guilt; "once those convictions were erased, the presumption of their innocence was restored." *Id.* at 1255. Thus, the Supreme Court determined that the "defendants should not be saddled with any proof burden . . . they are entitled to be presumed innocent." *Id.* at 1256. The Supreme Court concluded that there is a risk of erroneous deprivation of the defendants' interest in return of their money if the Exoneration Act is the exclusive remedy because "the Act conditions refund on defendants' proof of innocence by clear and convincing evidence." *Id.* Accordingly, the Supreme Court held that Colorado's scheme for refunding a defendant when a criminal conviction is invalidated fails due process. *See id.* at 1257–58.

The Supreme Court's majority opinion in *Nelson* did not address whether a defendant whose conviction has been vacated is entitled to recover restitution from the State if it has already been disbursed to victims. It appears that the restitution funds in that case had not been disbursed and were still possessed by the State of Colorado. *Nelson*, 137 S.Ct. at 1256. The concurring Justice in *Nelson* believed the majority's holding was too broad when it came to repayment of restitution. Justice Alito believed that the majority should not have treated restitution the same as fines and special assessments because the nature of restitution is different, and in some circumstances repayment of restitution should not be required. Most relevant to this case, Justice Alito expressed concern about the possibility of requiring a State (in the present case it would be the federal government) to refund restitution payments to a defendant if restitution payments had already been disbursed to victims. *See id.* at 1262–63 (Alito, J., concurring in the judgment). He went on to say:

> Would the Court reach that conclusion if state law mandated a refund from the recipients of the restitution? And if the States and the Federal Government are always required to foot the bill themselves, would that risk discourage them from seeking restitution—or at least from providing funds to victims until the conclusion of appellate review?

4

> It was unnecessary for the Court to issue a sweeping pronouncement on restitution. But if the Court had to address this subject to dispose of these cases, it should have acknowledged that—at least in some circumstances—refunds of restitution payments made under later reversed judgments are not constitutionally required.

*Id.* at 1263 (Alito, J., concurring in the judgment).

The Court finds Justice Alito's concurrence in *Nelson* and the Ninth Circuit's holding in *Hayes* instructive. Under circumstances such as the present case, where the restitution funds have been disbursed to the victims, the United States should not be required to refund the defendant. In addition, Medicine Horn does not identify any basis for a waiver of the United States' sovereign immunity for his claim seeking a refund of restitution paid. *See, e.g., Automatic Sprinkler Corp. v. Darla Environmental Specialists*, 53 F.3d 181, 182 (7th Cir. 1995) ("anyone who seeks money from the Treasury needs a statute authorizing that relief") (citations omitted).

Furthermore, the Court is not aware of any authority that it has jurisdiction to require parties not before the Court, such as the victims in this case, to refund Medicine Horn's restitution payments. Accordingly,

IT IS ORDERED:

1. That Jerry Medicine Horn's motion for return of payment he made in relation to the 1998 conviction, doc. 76, is granted as to the fine and special assessment and denied as to the restitution.

2. The Clerk of Court shall obtain the $100 paid by Medicine Horn for the special assessment and the $10.65 he paid toward the fine, and return $110.65 to Jerry Medicine Horn; and

3. That the United States' motion to apply the amount Jerry Medicine Horn paid for the fine and special assessment toward the attorney fees incurred by providing representation for Medicine Horn under the Criminal Justice Act is denied. (Doc. 79.)

Dated this 28th day of February, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK